# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| BYRON E. WALDMAN and BONNIE D. WALDMAN, <br><br> Plaintiffs, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION NO.: 2:23-cv-3389-RMG <br><br><br> **COMPLAINT** |

Plaintiffs Byron E. Waldman and Bonnie D. Waldman (together, "Plaintiffs"), by and through their undersigned counsel, complain of Defendant Allstate Insurance Company ("Defendant"), as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are citizens of South Carolina and reside in Charleston County, South Carolina.

2. Defendant is a foreign corporation operating from its principal place of business in Illinois.

3. The Court possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00.

4. Venue is appropriate in the South Carolina District Court, Charleston Division because a substantial part of the acts and omissions giving rise to this action occurred in Charleston County, South Carolina.

## FACTUAL BACKGROUND

5. Plaintiffs own and at all relevant times owned the real property located 267 Oak

Point Landing Drive in Mount Pleasant, South Carolina (the "Home").

6. In exchange for the payment of premiums by Plaintiffs, Defendant issued to Plaintiffs the homeowners insurance policy number 063849689 (the "Policy"), a copy of which is attached hereto as Exhibit A.

7. The Policy was effective beginning February 18, 2019, and remained in effect through the loss alleged herein.

8. At approximately 5:00 p.m. on August 8, 2019, lightning struck the Home, caused the Home to burn, and thereby damaged the Home and damaged or destroyed Plaintiffs' personal property in the Home.

9. The fire was a covered loss under the Policy.

10. Plaintiffs reported the loss to Defendant and claimed the benefits of the Policy (the "Claim").

11. In handling the Claim, Defendant engaged in negligent acts and omissions, breached the policy, and acted in bad faith, causing damages to Plaintiffs.

12. The "Additional Protection" section of the Policy provides: "[Defendant] will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover makes your residence premises uninhabitable. Payment for covered additional living expense will be limited to the least of the following: 1) the time period required to repair or replace the property we cover, using due diligence and dispatch; or 2) if you permanently relocated, the shortest time for your household to settle elsewhere; 3) 12 months."

13. After the fire was extinguished and the Claim was made, Plaintiffs, with the consent of Defendant, retained ServiceMaster of Charleston ("ServiceMaster") to perform demolition and remediation at the Home.

14. The reconstruction of the Home was delayed by Defendant's failure to timely fulfill its obligations under the Policy to diligently repair the Home.

15. Defendant, without justification, delayed the reconstruction work for many months.

16. From September 13, 2019, through October 16, 2019, no work occurred at the Home because Defendant's claims handler disputed costs with a contractor Defendant retained to remove the contents and demolish the Home and failed to timely undertake efforts to provide the contractor with certification from an engineer that the Home was safe for the contractor's personnel to enter.

17. From December 13, 2019, through February 24, 2020, no work occurred at the Home because Defendant's claims handler failed to timely approve contractor the claims handler proposed for the reconstruction work, then removed the contractor Defendant selected for the reconstruction work, and did not timely engage a new contractor.

18. Given Defendant's negligence in relation to the collapse of the garage, master bedroom, and master and guest bathrooms and Defendant's failure to diligently proceed with the reconstruction work, Byron anticipated that Defendant's negligence and delays would prevent the timely completion of the reconstruction work.

19. Byron contacted Defendant numerous times, explaining that the reconstruction work had been delayed by Defendant's unreasonable acts and omissions and that Defendant was thereby obligated to pay for Plaintiffs' additional living expenses beyond the twelve-month period stated in the Policy.

20. On August 9, 2020, Defendant's payments for Plaintiffs' additional living expenses ended.

21. From August 9, 2020, to October 2, 2021, Plaintiffs incurred rent and other

expenses caused by their inability to return to the Home.

22. The reconstruction work was again unreasonably delayed from May 8, 2020, to July 24, 2020, when no work occurred at the Home due to Defendant's and its agents' delays in providing the plans required to obtain the necessary permits.

23. The reconstruction work was again unreasonably delayed from July 24, 2020, to mid-August 2020, and more specifically on or around August 20, 2020, when Defendant unreasonably failed to timely respond to the contractor's repeated requests for approval of additional costs.

24. The reconstruction work was again unreasonably delayed from October 15, 2020, to late February of 2021, and more specifically on or around February 26, 2021, when Defendant refused to pay a contractor for the reconstruction work.

25. The "Section I Conditions" section of the Policy provides that upon a loss, Plaintiffs must provide Defendant with a "detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed."

26. Plaintiffs submitted detailed lists of destroyed personal property and thereby, satisfied their obligations under the Policy.

27. Section I, Coverage C of the Policy provides that Defendant insures against the loss of the "[p]ersonal property owned or used by an insured person anywhere in the world."

28. The subsection "5. How We Pay for a Loss" in "Section I Conditions" in the Policy provides that payments for the loss of covered personal property will be made on an "actual cash value basis" and then under the "Personal Property Reimbursement" provision, additional payments will be made in excess of actual cash value if the insured replaces the destroyed personal property within 180 days of the actual cash value payment, except that the "Personal Property

Reimbursement" provision does not apply to "antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced" or "articles whose age or history contribute substantially to their value" including "memorabilia, souvenir's and collector's items."

29. Defendant acted in bad faith in rejecting Plaintiffs' valuation of destroyed personal property.

30. In response to Plaintiffs' valuation of destroyed personal property, Defendant provided the values it assigned to the destroyed personal property, and Defendant's purported values do not comply with the Policy's terms, are patently unreasonable, and bear no relationship to the actual value of destroyed property.

31. Defendant engaged in bad faith claims handling by failing to value Plaintiffs' personal property in accordance with the Policy's terms.

32. Defendant engaged in bad faith claims handling by purporting to use the replacement cost less depreciation method in arriving at its position as to the value of Plaintiffs' destroyed personal property but actually making no effort to determine replacement costs and instead using plainly different and inferior items to arrive at its purported valuations.

33. Defendant engaged in bad faith claims handling by using patently inaccurate item lifespans to determine the purported depreciation of Plaintiffs' person property.

34. Defendant engaged in bad faith claims handling by applying depreciation in calculating the value of antiques, collectibles, and similar items of destroyed personal property;

35. Plaintiffs communicated with Defendant regarding Defendant's unreasonable, erroneous valuations of Plaintiffs' personal property including explaining why Defendant's valuations are erroneous and requesting Defendant reconsider its valuations.

36. Defendant represented that prior to making its final offer in August of 2022, it

performed a review of the valuations and found no issues with its valuations.

37. Defendant failed to reconsider its valuations and failed to provide any explanation of why Defendant's valuations substantially differ from Plaintiffs' valuations or why Defendant's valuations are purportedly reasonable, good faith valuations of the destroyed property.

38. On May 30, 2023, counsel for Plaintiffs sent Defendant the demand letter ("Demand Letter") attached hereto as Exhibit B, stating the issues set forth herein, demanding a resolution of the Claim, and requesting a response from Defendant by June 20, 2023.

39. To date, Defendant's only response to the Demand Letter is the email and acknowledgment letter attached hereto as Exhibit C.

40. To date, Defendant has not made any payment to Plaintiffs for their additional living expenses incurred from August 9, 2020, to October 2, 2021.

41. To date, Defendant has not made any payment to Plaintiffs for destroyed personal property.

42. To date, Defendant has rejected Plaintiffs' reasonable attempts to resolve this dispute.

## FOR A FIRST CAUSE OF ACTION
**Bad Faith**

43. Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

44. A mutually binding contract of insurance, the Policy, was entered into between Plaintiffs and Defendant.

45. Plaintiffs suffered a loss covered by the Policy.

46. Plaintiffs timely and properly submitted to Defendant the Claim for the benefits Plaintiffs are entitled to under the Policy for the covered loss.

47.  Implied in every contract of insurance in South Carolina is the duty of good faith and fair dealing.

48.  Defendant acted in bad faith, unreasonably, and without regard to the rights of its insureds in breach of its duty and in breach of the implied covenant of good faith and fair dealing in the following particulars:

   a. Unreasonably delaying the reconstruction of the Home by unreasonably removing the first contractor and failing to timely engage a new contractor, unreasonably delaying the consideration and approval of a reconstruction estimate provided by Defendant's approved contractor and delaying approval of a reconstruction plan for the replacement contractor, unreasonably delaying the process of obtaining a permit for work at the Home, and unreasonably refusing to pay a contractor for work at the Home;

   b. Refusing to pay Plaintiffs' additional living expenses incurred as the proximate result of Defendant unreasonably delaying the reconstruction of the Home;

   c. Unreasonably valuing Plaintiffs' destroyed personal property;

   d. Failing to value Plaintiffs' personal property in accordance with the Policy's terms;

   e. Purporting to use the replacement cost less depreciation method in arriving at its position as to the value of Plaintiffs' destroyed personal property but actually making no effort to determine replacement costs and instead using plainly different and inferior items to arrive at its purported valuations;

   f. Using patently inaccurate item lifespans to determine the purported depreciation of Plaintiffs' personal property;

g. Applying depreciation in calculating the value of antiques, collectibles, and similar items of destroyed personal property;

h. Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims;

i. Not attempting in good faith to effect prompt, fair, and equitable settlement of the Claim;

j. Compelling Plaintiffs to institute this suit to recover amounts reasonably due with respect to the Claim;

k. Offering to resolve the Claim for an amount less than the amount otherwise reasonably due based upon the possibility and probability that Plaintiffs would be required to incur attorneys' fees to recover the amount reasonably due; and

l. Unreasonable delay in paying and an unreasonable failure to pay and settle in full the Claim.

49. Defendant's refusal to pay Plaintiff the benefits they are entitled to under the Policy is the result of Defendant's bad faith actions in breach of the implied covenant of good faith and fair dealing in the Policy.

50. Defendant's bad faith conduct was willful and in reckless disregard of Plaintiffs' rights under the Policy.

51. Plaintiffs suffered and will suffer the following damages as the direct and proximate result of Defendant's bad faith, unreasonable actions:

a. The additional living expenses Plaintiffs incurred from August 9, 2020, to October 2, 2021, which total at least $46,959.03;

b. The value of the destroyed personal property which totals at least $462,362.00;

    c. The time, annoyance, and stress of filing and pursuing this action; and

    d. The attorneys' fees and costs resulting from filing and pursuing this action.

52. Plaintiffs are entitled to an award of punitive damages.

53. Plaintiffs are entitled to an award of attorneys' fees.

<strong><u>FOR A SECOND CAUSE OF ACTION</u></strong><br><strong>Breach of Contract</strong>

54. Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

55. On August 8, 2019, a valid and binding policy of insurance, the Policy, existed whereby Defendant insured Plaintiffs against specified losses.

56. Plaintiffs paid premiums in consideration for Defendant providing the Policy.

57. The Policy provides that Defendant will pay Plaintiffs for losses covered by the Policy.

58. Plaintiffs are the insureds under the Policy.

59. The fire at the Home and resulting destruction of or damage to the Home and Plaintiffs' personal property at the Home was a loss covered by the Policy.

60. Plaintiffs timely and properly submitted a claim, the Claim, to Defendant for the fire and resulting damages.

61. Plaintiffs demanded Defendant pay the benefits due and owing under the terms of the Policy.

62. Plaintiffs complied with all terms and conditions of the Policy and with all reasonable requests made of them by Defendant.

63. Defendant failed to pay the benefits due and owing under the terms of the Policy.

64. Defendant breached the Policy by failing to pay the benefits due and owing under

the terms of the Policy.

65. Defendant breached the Policy by unreasonably delaying the reconstruction of the Home by unreasonably removing the first contractor and failing to timely engage a new contractor, unreasonably delaying the consideration and approval of the reconstruction estimate provided by Defendant's approved contractor and delaying approval of a reconstruction plan for the replacement contractor, unreasonably delaying the process of obtaining a permit for work at the Home, unreasonably refusing to pay a contractor for work at the Home, and other unreasonable, avoidable delays.

66. Defendant breached the Policy by refusing to pay Plaintiffs' additional living expenses incurred as the proximate result of Defendant unreasonably delaying the reconstruction of the Home.

67. Defendant breached the Policy by unreasonably valuing Plaintiffs' destroyed personal property.

68. Defendant breached the Policy by failing to value Plaintiffs' personal property in accordance with the Policy's terms.

69. Defendant breached the Policy by purporting to use the replacement cost less depreciation method in arriving at its position as to the value of Plaintiffs' destroyed personal property but actually making no effort to determine replacement costs and instead using plainly different and inferior items to arrive at its purported valuations.

70. Defendant breached the Policy by using patently inaccurate item lifespans to determine the purported depreciation of Plaintiffs' personal property.

71. Defendant breached the Policy by applying depreciation in calculating the value of antiques, collectibles, and similar items of destroyed personal property.

72. Plaintiffs suffered and will suffer the following damages as the direct and proximate result of Defendant's breaches of the Policy:

    a. The additional living expenses Plaintiffs incurred from August 9, 2020, to October 2, 2021, which total at least $46,959.03;

    b. The value of the destroyed personal property which totals at least $462,362.00;

    c. The time, annoyance, and stress of filing and pursuing this action; and

    d. The attorneys' fees and costs resulting from filing and pursuing this action.

73. Plaintiffs are entitled to an award of attorneys' fees.

WHEREFORE, Plaintiffs demand a jury trial and pray for judgment against Defendant for actual and punitive damages and attorneys' fees and for such other and further relief as this Court deems just and proper.

        THE STEINBERG LAW FIRM, LLC
        61 Broad Street
        Charleston, SC 29401
        (843) 720-2800 - office
        (843) 871-8565 - facsimile

        By:     s/Elliotte Quinn
            F. Elliotte Quinn IV
            SC Bar No.: 100450
            Fed. Bar No.: 12563
            equinn@steinberglawfirm.com

        *Attorney for Plaintiffs*